This appeal and cross-appeal arise from a dispute over the amount a junior mortgagee must pay to exercise his statutory right to redeem property. Jim G. Bockman, the plaintiff below and the junior mortgagee, appeals from a summary judgment in favor of the senior mortgagee, WCH, L.L.C. ("WCH"), holding that the debt owed under a promissory note and secured by a mortgage on real property included interest upon unpaid interest (case no. 1040305). WCH, the defendant below, cross-appeals from a summary judgment in favor of Bockman holding that the debt secured by a mortgage owned by WCH, but having a lower priority than the mortgage owned by Bockman, is not a lawful charge to be included in the redemption costs (case no. 1040419). We affirm.
 Facts and Procedural History
The material facts of this case are undisputed. Hartley Silica, Inc. ("Hartley"), owned real property in Autauga County ("the property"). Hartley borrowed money five times from various lenders, and the *Page 791 
debt from those loans was secured by five different mortgages on the property.
On September 7, 1989, Hartley borrowed $561,230 from William I. Dozier, D.C. Mercer, and Austin V. White, Jr. ("the mortgagees"). The debt was evidenced by a promissory note ("the note") and was secured by a mortgage on the property ("the first mortgage"). The note stated:
 "[Hartley] promises to pay to the order of [the mortgagees] the principal sum of Five hundred sixty-one thousand two hundred thirty and no/100 Dollars ($561,230.00), with interest thereon from date at the rate: of ten percent (10%) per annum, the said indebtedness being payable in the following manner: 40 semi-annual payments of $32,707.62 each with the first payment due 6 months from [September 7, 1989]. Said payments represent the principal at 10% interest amortized over a 20 year period with payments made every six months. The 40th and last payment shall be in the amount of $33,663.30.
 "Each payment shall be applied first to the payment of acrued. [sic] interest and the balance as credit on the principal. Said principal and interest . . . shall bear interest from maturity at the said rate until paid."
On September 12, 1989, the first mortgage was recorded in the probate judge's office in Autauga County. Hartley paid a total of $166,415.24 on the note.[1]
On May 11, 1992, Hartley borrowed $468,311 from Bockman, and the debt was secured by a mortgage on the property ("the second mortgage"). The second mortgage was recorded in the probate judge's office in Autauga County on June 12, 1992. In 1994, Bockman made two more loans to Hartley that were also secured by mortgages on the property ("the third and fourth mortgages").
On September 25, 1997, Hartley and the mortgagees executed an amendment to the terms of the note and the first mortgage ("the 1997 agreement"). Hartley was in default under the terms of the note and the first mortgage, and the 1997 agreement allowed Hartley to avoid foreclosure on the property. Under the terms of the 1997 agreement, Hartley and the mortgagees agreed that, as of August 15, 1997, the balance due on the note was $750,000. They further agreed that the balance due would be $800,000 if full payment of the mortgage was made on or before November 15, 1997.[2] Hartley never made any further payments on the note, but the mortgagees elected not to exercise their right to foreclose on the property. *Page 792 
On March 22, 2000, Hartley borrowed money from WCH.[3]
The debt was evidenced by a promissory note and was secured by a mortgage on the property ("the fifth mortgage"). The fifth mortgage was recorded in the probate judge's office in Autauga County on April 10, 2000. Hartley never made any payments on the debt secured by the fifth mortgage.
Through a series of assignments, the mortgagees sold the note and first mortgage to WCH on May 5, 2003. Therefore, WCH became the holder of the note and the first mortgage, as well as the fifth mortgage. Because Hartley was in default on the debt secured by the first mortgage, WCH exercised its right to foreclose on the property. On May 6, 2003, a foreclosure sale was conducted under the provisions of the first mortgage. WCH was the highest bidder; it purchased the property for $1,357,291.
On April 14, 2004, Bockman, who held the second, third, and fourth mortgages, "made a demand for lawful charges for redemption from foreclosure" pursuant to the statutory right of redemption set out in § 6-5-248, Ala. Code 1975. Section6-5-248, Ala. Code 1975, permits "[a]ny junior mortgagee" to redeem property that has been sold. This statutory right of redemption must be exercised within one year from the date of the sale. To exercise the right of redemption, a junior mortgagee must
 "pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments . . . and all other lawful charges, also with interest aforesaid; lawful charges are the following:
 "(1) Permanent improvements as prescribed herein.
 "(2) Taxes paid or assessed.
 "(3) All insurance premiums paid or owed by the purchaser
 "(4) Any other valid lien or encumbrance paid or owned by such purchaser or his or her transferee or if the redeeming party is a judgment creditor or junior mortgagee or any transferee thereof, then all recorded judgments, recorded mortgages and recorded liens having a higher priority in existence at the time of sale which are revived under Section 6-5-248(c)."
§ 6-5-253(a), Ala. Code 1975.
WCH responded to Bockman's "demand for lawful charges for redemption from foreclosure," but Bockman disputed the redemption cost calculated by WCH. On May 4, 2004, Bockman filed a declaratory-judgment action against WCH seeking a determination of the amount of money he must pay to redeem the property. Bockman also tendered $1,184,664 with the complaint alleging that, under § 6-5-253, Ala. Code 1975, this was the amount necessary for him to redeem the property. WCH answered Bockman's complaint and denied Bockman's allegation that the tendered amount was the correct redemption cost.
On August 26, 2004, WCH filed a motion for a summary judgment with supporting affidavits and exhibits. In support of the motion, WCH submitted a detailed calculation of what it contended was the correct redemption cost. Joseph M. Broday, a certified public accountant, prepared this calculation, and he testified in an affidavit that Bockman was required to pay $2,473,197.16 to redeem the property. *Page 793 
WCH alleged that this amount represented the sum of the purchase price it had paid at the foreclosure and all other "lawful charges" as set out in § 6-5-253(a), Ala. Code 1975.
The trial court ordered Bockman to submit a response to WCH's summary-judgment motion by September 15, 2004, and set the hearing on the motion for September 21, 2004. Bockman did not respond to WCH's summary-judgment motion until the morning of September 21, 2004, the same day set for the hearing on the motion. Bockman filed his own motion for a summary judgment with his response to WCH's motion. Bockman argued that WCH's redemption-cost calculation was erroneous because, he said, it was partly based on the terms of the 1997 agreement. Bockman contended that, because the 1997 agreement was executedafter the execution of the second, third, and fourth mortgages, it could not be enforced against him in calculating the redemption cost.
At the hearing, WCH asked the trial court if it could submit supplemental materials to support its motion for a summary judgment, and the trial court granted WCH's request. On September 24, 2004, WCH submitted a "supplemental brief and affidavit." The supplemental materials included an alternative redemption-cost calculation. J. Wray Pearce, a certified public accountant, prepared this calculation based on the premise that the 1997 agreement could not be enforced against Bockman.[4]
Pearce testified in an affidavit that Bockman had to pay $1,849,809.03 to redeem the property. WCH argues that this calculation was prepared according to the original terms of the note.
Bockman replied to WCH's supplemental materials arguing that the calculation set out in WCH's "supplemental brief and affidavit" was incorrect for two reasons. First, Bockman argued that the calculation was erroneous because it was based on the premise that the debt owed under the note and secured by the first mortgage included interest upon unpaid interest. Second, Bockman argued that the calculation was erroneous because it included the amount necessary to pay the debt secured by the fifth mortgage.
On October 20, 2004, the trial court entered a final order on Bockman's and WCH's motions for summary judgment. The trial court found that neither Bockman's nor WCH's calculation of proposed redemption costs complied with § 6-5-253(a), Ala. Code 1975. The trial court ordered that Bockman must pay $1,625,874.80 to redeem the property. In determining the redemption amount, the trial court found that the 1997 agreement could not be enforced against Bockman in calculating the redemption cost and that the amount necessary to pay off the debt secured by the fifth mortgage was not a permissible "legal charge" to be included in the redemption cost. The trial court ordered that Bockman had to deposit with the clerk of the court the additional sum of $441,210.80 (in addition to the $1,184,664 he had already tendered) plus accrued interest at $145.06 per day from May 4, 2004, to validly exercise his right of redemption. In its final order, the trial court did not specifically address the issue whether the debt owed on the note and secured by the first mortgage should include interest upon unpaid interest. However, it appears that the trial court included interest upon unpaid interest as *Page 794 
a permissible charge in calculating the redemption cost.
On October 29, 2004, Bockman filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the judgment and a Rule 62(b), Ala. R. Civ. P., motion to stay the execution of the final order pending a ruling on the Rule 59(e) motion. In his motion, Bockman asked the trial court to address the issue whether interest upon unpaid interest was part of the debt owed under the terms of the note and the first mortgage. The trial court granted Bockman's motion to stay the execution of the final order pending consideration of the Rule 59(e) motion. The trial court held a hearing on November 10, 2004, and subsequently denied Bockman's Rule 59(e) motion. Therefore, the trial court essentially found that interest upon unpaid interest was owed under the terms of the note and the first mortgage. Bockman appealed and WCH cross-appealed.
 I. Timeliness of WCH's Supplemental Brief and Affidavit
WCH argued in its "supplemental brief and affidavit" presented to the trial court after the hearing on the summary-judgment motions that the debt owed under the note included interest upon unpaid interest. Bockman argues that under § 6-8-103, Ala. Code 1975, WCH failed to timely raise the issue whether the debt secured by the first mortgage included interest upon unpaid interest. Section 6-8-103, Ala. Code 1975, provides:
 "The court may, at its discretion, at any time before the conclusion of the argument, when it appears to be necessary to the due administration of justice, allow a party to supply an omission in the testimony on such terms and under such limitations as the court may prescribe."
Bockman argues that the trial court's consideration of WCH's "supplemental brief and affidavit" violated § 6-8-103, Ala. Code 1975. However, Bockman never presented this argument to the trial court. Bockman did argue to the trial court that WCH "argued for the first time" after the hearings on the summary-judgment motion that the amount owed on the note should include interest upon unpaid interest. However, Bockman never argued to the trial court that it should not consider WCH's "supplemental brief and affidavit" because it was "untimely," or because consideration of those materials violated § 6-8-103, Ala. Code 1975. Therefore, Bockman's argument was not preserved for review. See Halford v. Alamo Rent-A-Car, LLC,921 So.2d 409, 416 (Ala. 2005) ("`This Court cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal'" (quoting State Farm Mut. Auto. Ins. Co. v.Motley, 909 So.2d 806, 821 (Ala. 2005))).[5] *Page 795 
 II. Propriety of the Summary Judgment Standard of Review
"`We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:
 "`"We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material facts exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw."
 "American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002) (quoting Nationwide Prop. Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000) (citations omitted))."
General Motors Corp. v. Kilgore, 853 So.2d 171, 173
(Ala. 2002).
A. Bockman's Appeal, Case No. 1040305
Bockman and WCH agree that under § 6-5-253(a), Ala. Code 1975, the debt owed under the note and secured by the first mortgage on. the property was a lawful charge to be applied to the redemption cost. However, Bockman argues that the trial court erred in entering a summary judgment for WCH on the issue whether the amount due under the note included interest upon unpaid interest.
A promissory note is a form of contract; therefore, it must be construed under general contract principles.See 11 Am. Jur. 2d Bills and Notes § 2 (1997) ("Bills and notes . . . are contracts; accordingly, the fundamental rules governing contract law are applicable to the determination of the legal questions which arise over such instruments." (footnotes omitted)); William D. Hawkland and Lary Lawrence, UCC Series § 3-119, Official Comment (1994) ("As between the immediate parties a negotiable instrument is merely a contract. . . ."). "`General contract law requires a court to enforce an unambiguous, lawful contract, as it is written. P S Business, Inc. v. South Central Bell Telephone Co.,466 So.2d 928, 931 (Ala. 1985). See also McDonald v. U.S. DieCasting and Development Co., 541 So.2d 1064 (Ala. 1989).'"Dawkins v. Walker, 794 So.2d 333, 339 (Ala. 2001) (quoting Ex parte Dan Tucker Auto Sales, Inc.,718 So.2d 33, 35-36 (Ala. 1998)).
In support of its motion for a summary judgment, WCH argued that the note in this case expressly provided for charging interest upon unpaid interest. The note stated:
 "Each payment shall be applied first to the payment of acrued [sic] interest and the balance as a credit on the principal. Said principal and interest . . . shall bear interest from maturity at said rate until paid."
(Emphasis added.) The express terms of the note provide that accrued interest and matured principal would bear interest at 10 percent until paid. Because the note expressly provided for the payment of interest upon unpaid interest, WCH met its burden of presenting substantial evidence indicating that the amount due under the note included interest upon unpaid interest. *Page 796 
Bockman, however, argues that the trial court's judgment was not supported by the evidence. Bockman contends that the mortgagees could not have intended that interest upon unpaid interest be applied to the debt owed on the note because, he says, Hartley and the mortgagees agreed in the 1997 agreement that the amount actually due under the note and first mortgage was $750,000. Bockman further argues that, if the mortgagees had been charging interest upon unpaid interest, the amount due on the note at the time the 1997 agreement was executed would have been $1,033,000. Lastly, Bockman argues that the affidavits of the mortgagees "make it clear that the original parties to the 1989 note and mortgage did not charge interest on unpaid interest."
Contrary to Bockman's assertions, the affidavits of the mortgagees do not "make it clear" that the note did not provide for interest upon unpaid interest. Rather, the mortgagees testified that in 1997 they entered into an agreement with Hartley to amend the terms of the note and the first mortgage "by establishing and fixing the outstanding balance due under the Note" at $750,000. The 1997 agreement was the result of a compromise between Hartley and the mortgagees in anticipation of full payment. The evidence indicates that the 1997 agreement was an "amendment" and that the $750,000 figure did not reflect the actual amount owed under the original terms of the note. Bockman insisted to the trial court, and both parties conceded, that the 1997 agreement was not to be considered in determining the redemption amount. Further, the express terms of the note stipulated that the debtor, Hartley, promised to pay interest upon unpaid interest. Bockman failed to present sufficient evidence to overcome WCH's motion for a summary judgment on the issue whether the note provided for charging interest upon unpaid interest.
Bockman also argues that there is no "common law or statutory authority" for charging interest upon unpaid interest on the debt owed on the note. Bockman argues that under this Court's holding in Burgess Mining Construction Corp.v. Lees, 440 So.2d 321, 338 (Ala. 1983), the interest applied should have been "simple interest and nothing more." However, the facts of Burgess are distinguishable from the facts of this case. In Burgess, there was no written contract between the parties setting out the controlling interest rate. Burgess, 440 So.2d at 338
("Consequently, the Court holds that where, as in this case, no written contract controls the interest rate, thereby precluding the 8% rate of [§] 8-8-1, the legal rate ofpre-judgment interest is 6% per annum."). In contrast, in this case, the language of the note expressly states that interest upon unpaid interest would be charged to the debt owed under the note. Further, our common law provides authority for charging interest upon unpaid interest. In Smith v. PennMutual Life Insurance Co., 244 Ala. 610, 614, 14 So.2d 690,694 (1943), this Court addressed whether it was permissible for parties to a loan to expressly agree to compute the amount due by charging interest upon unpaid interest. This Court held:
 "While there is considerable diversity of opinion on the subject, the rule of our decisions is that an express agreement to pay interest on interest, especially when such agreement is made after the maturity of the original principal, is not unlawful unless the interest so computed exceeds the legal rate for the time, and impinges the statute against usury."
244 Ala. at 614, 14 So.2d at 694. Bockman even concedes that "[t]he only way that [WCH's] calculations could possibly be correct is if there is express language in the agreement between Hartley Silica and the Mortgagees to allow for interest on unpaid *Page 797 
interest." Further, Bockman has not cited any authority stating that a mortgagee cannot charge interest upon unpaid interest. We hold that the trial court did not err in entering a summary judgment for WCH on the issue whether interest upon unpaid interest was to be applied to the debt owed on the note.
 B. WCH's Cross-Appeal, Case No. 1040419
WCH argues that, under the plain meaning of §6-5-253(a)(4), the trial court erred in excluding the unpaid balance, plus accrued interest, of the fifth mortgage from the costs of redemption. We disagree.
"`In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.'" Ex parte Shelby County Health CareAuth, 850 So.2d 332, 337 (Ala. 2002) (quoting DeKalbCounty LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270,275-76 (Ala. 1998)). The plain language of § 6-5-253(a)(4) states:
 "(a) Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments . . . and all other lawful charges, also with interest as aforesaid; lawful charges are the following:
 ". . . .
 "(4) Any other valid lien or encumbrance paid or owned by such purchaser or his or her transferee or if the redeeming party is a judgment creditor or junior mortgagee or any transferee thereof, then all recorded judgments, recorded mortgages and recorded liens having a higher priority in existence at the time of the sale. . . ."
Ala. Code 1975, § 6-5-253 (emphasis added).
WCH contends that the § 6-5-253(a)(4) unambiguously states that the redemption costs include "[a]ny other valid lien or encumbrance paid or owned by such purchaser"; therefore, WCH argues, the unpaid balance of the fifth mortgage should be included in the redemption costs under § 6-5-253(a)(4). However, because Bockman is a junior mortgagee, the second portion of subsection (a)(4) applies. The statute clearly provides that the lawful charges of a junior mortgagee
include recorded mortgages having a higher priority.
Because the fifth mortgage is lower in priority than Bockman's second mortgage, it should not be included in the costs of redemption under § 6-5-253(a)(4). Therefore, the trial court did not err in entering a summary judgment for Bockman on the issue whether the unpaid debt on the fifth mortgage should be excluded from the redemption amount.
 Conclusion
The trial court's summary judgment in favor of WCH holding that interest upon unpaid interest was to be charged under the terms of the note was supported by the express terms of the note. In addition, the trial court's summary judgment in favor of Bockman holding that the debt secured by the fifth mortgage was excluded from the redemption cost was also proper under § 6-5-253(a)(4), Ala. Code 1975. Therefore, we affirm the trial court's judgment.
1040305 — AFFIRMED.
1040419 — AFFIRMED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] Hartley paid the following amounts on the note: $32,707.62 on April 2, 1990; $61,000 on July 14, 1991; $40,000 on February 2, 1992; and $32,707.62 on June 4, 1992. Hartley did not make any further payments on the note.
[2] The agreement stated:
 "1. It is understood and agreed that as of the 15th day of August 1997, the outstanding balance of the Note is Seven Hundred Fifty Thousand Dollars ($750,000.00) inclusive of any and all accurred [sic] interest and penalties.
 "2. The said Mortgagees shall allow and extend the closing until the 15th day of November 1997, for an additional Fifty Thousand Dollars ($50,000.00) to be paid upon closing. The total amount due on the 15th day of November, 1997, shall be Eight Hundred Thousand Dollars ($800,000.00) (inclusive of principle, interest, and penalties).
 "3. In the event that closing shall not occur on or before the 15th day of November 1997, it is understood and agreed by and between [Hartley] and the Mortgagees that [Hartley] shall incur an additional Six Hundred ($600.00) per diem for each additional day thereafter until closing."
[3] WCH, L.L.C., is a single-member limited liability company. The sole member of the company is William Cobb Hazelrig.
[4] On appeal, both parties agree that the 1997 agreement is not enforceable against Bockman in calculating the cost of redemption.
[5] Even if this argument had been preserved for review, § 6-8-103 does not appear to apply to the facts of this case. Section 6-8-103 sets out a discretionary rule fortrials. The statute "was adopted deliberately as a restraint upon the laxity of the common-law practice of permitting trial judges at any stage of a trial, before judgment, to reopen cases for the admission of evidence."Davis v. State, 20 Ala.App. 463, 466, 103 So. 73, 75 (1925) (emphasis added). In the case at bar, the trial court accepted WCH's supplemental materials after the hearing on the parties' summary-judgment motion, rather than after a trial proceeding.
Bockman has also failed to demonstrate that the trial court exceeded its discretion in allowing WCH to submit additional materials given that Bockman's response to WCH's motion for a summary judgment was not filed until September 21, 2004, the day of the hearing, and the trial court had previously ordered Bockman to respond to WCH's motion by September 15, 2004. *Page 798