MAIN, Justice.
This case involves a dispute over who is the proper beneficiary of an individual retirement account (“IRA”) owned by decedent Edward F. Dees, Sr. (“Dees”). Timothy R. Dees, Edward Dees, Jr., and Donna Dees Maddox, Dees’s adult children (“the children”), appeal from a summary judgment entered against them and in favor of Dees’s surviving spouse, Martha Lafaye *810 Dees. Martha Dees cross-appeals from the dismissal of her claims against Morgan Stanley Smith Barney, LLG (“Morgan Stanley”), the financial-services firm that managed the IRA. We reverse and remand.
I. Facts and Procedural History
In 1984, Dees opened an IRA with Dean Witter, the predecessor to Morgan Stanley. At the time Dees opened the account, he was married to Mary Helen Dees, the mother of the children. Mary Helen Dees died in 1986. Dees married Ardis Dees in 1988; Ardis Dees died in 1994. In 1995 Dees married Martha Dees. Dees died on January 14, 2014, survived by Martha Dees and the children. Dees’s will left a life estate in the marital home to Martha Dees and directed that the remainder of his estate be passed to the children in equal shares.
At the time of Dees’s death, Morgan Stanley had no record of any beneficiary having been designated for Dees’s IRA. It is unknown if there was ever a designated-beneficiary form on file. The original Dean Witter documents associated with Dees’s IRA account were stored in the World Trade Center and were lost, presumably destroyed, as a result of the terrorist attack of September 11, 2001. The terms of the form IRA agreement used by Dean Witter at the time Dees opened his IRA, however, are known. That form— the IRA-2000 Adoption Agreement—contained a default-beneficiary provision. The default-beneficiary provision provided that, upon the death of the account holder, “the interest in the Account ... shall become the property of the primary beneficiary, if he or she survives, and if no primary beneficiary survives, then of the contingent beneficiary, and if no designated beneficiary survives, or the Custodian cannot locate the beneficiary, then the Custodian shall distribute the amounts payable to my spouse, if he or she survives me, and if not, to my children in equal shares, and if no children survive me, to my estate.”
On numerous occasions between 2005 and 2013 Morgan Stanley notified Dees that it had no beneficiary-designation form on file for his IRA. For example, a notice sent to Dees in 2005 stated:
“In reviewing our records, we noted that we do not have complete copies of your documentation on file with us, specifically copies of your current designation(s). Therefore, we would also like to take this opportunity to ask you to update your beneficiary designation(s) by completing the enclosed form.
“As you know it is very important for individuals (or couples) to periodically review and plan for how they wish their assets to be distributed upon their deaths. Having the necessary legal documents in place ensures that things will happen the way they wish them to.
“Please be aware that, since our documentation on your account is incomplete, if you do not provide Morgan Stanley with your beneficiary designation(s) then we will apply the beneficiary default rules in the Morgan Stanley IRA Plan Document to your Morgan Stanley IRA accounts. The default rules for Morgan Stanley IRAs state:
Ulln the event no designated beneficiary survives the IRA cnmer, or the owner fails to designate a beneficiary, the custodian shall pay death benefits under the Plan to the surviving spouse of the IRA owner, if any, and if not, to the IRA owner’s surviving children in equal shares. If no children survive the IRA owner, the custodian shall pay to the personal representative of the IRA owner’s estate.[1] ir »
*811 (Emphasis in original.) Notice that no designated beneficiary had been indicated also periodically appeared on Dees’s monthly account statements.[2]
Following Dees’s death, Morgan Stanley informed the children that it intended to distribute the funds in Dees’s IRA to Martha Dees in accordance with the default provisions of the IRA agreement.
On March 7, 2014, the children filed the underlying action, requesting a judgment declaring them the proper beneficiaries of the IRA and also seeking a temporary restraining order (“TRO”) prohibiting Morgan Stanley from distributing the funds to Martha Dees. On March 11, 2014, the Mobile Circuit Court entered a TRO prohibiting Morgan Stanley from disbursing the funds in Dees’s IRA. Morgan Stanley filed an answer, and, pursuant to Rule 22, Ala. R. Civ. P., filed a counterclaim and third-party claim for interpleader, naming Martha Dees as a third-party defendant. Martha Dees answered and asserted her own counterclaim and cross-claim for a declaratory judgment. Martha Dees also asserted counterclaims against Morgan Stanley alleging misrepresentation and suppression. Martha Dees stipulated that her tort claims against Morgan Stanley were pleaded in the alternative and were asserted only in the event that the court determined that the children or the estate were the beneficiaries of the IRA.[3]
The children and Martha Dees filed cross-motions for a summary judgment. The children argued that it was their father’s intent to pass the funds in the IRA to his natural children. They contended that, because no copy of a signed IRA agreement had been produced, there was no evidence indicating that Dees had assented to any default-beneficiary provision. Thus, they argued, the funds in the IRA should pass through- Dees’s estate. In support of their motion, the children each submitted. an identically worded affidavit attesting that, when their father opened the IRA account, he informed the children that upon his death the funds were to pass to their mother, then to the children in equal shares. They testified that in 1999 Dees called a family meeting to discuss his estate plans. At that meeting he purportedly told the children that the funds in the IRA would pass to the children in equal shares upon his death. They further testified that in 2002 Dees was diagnosed with Alzheimer’s .disease. The children also submitted an affidavit of Dees’s friend, who testified that Dees told him before Mary Helen Dees died that his “retirement account” would pass to the children should Mary Helen Dees predecease them.
In her cross-motion for a summary judgment, Martha Dees argued that the default-beneficiary provisions of the IRA agreement applied. Specifically, she argued that, even if Dees had originally executed a beneficiary-designation form naming the children as contingent beneficiaries, there was uncontradicted evidence that Dees had executed a new beneficiary-designation form naming his second wife as the sole beneficiary. In support of her motion, Martha Dees submitted af *812 fidavits of Ardis Dees’s children, Edward Sutton and Bonnie Main. Sutton testified that he had participated in estate-planning discussions with his mother and Dees and that Dees intended that, should he predecease Ardis, all of his assets should pass to Ardis, including his IRA. Main testified that her mother showed her a beneficiary-designation form signed by Dees, which Main believes was related to the IRA held by Morgan Stanley, that named Ardis as the sole beneficiary and listed no contingent beneficiaries.
Martha Dees also submitted an affidavit in which she testified that Dees told her that he intended the funds in the IRA go to her and that he refused to even consider her suggestion that it be divided between her and the children. She says that the IRA was not discussed at the family estate-planning meeting. Martha Dees also disputed the implication that Dees’s mental capacity prevented him from making decisions regarding the IRA.
Morgan Stanley did not take a position in the trial court as to whether Martha Dees or the children were the proper beneficiary or beneficiaries. It did, however, respond to the summary-judgment motions for the purpose of supplying factual clarification regarding the IRA. In that regard, it submitted the affidavit of Sandra Nor-sworthy, the complex-risk officer in Morgan Stanley’s Mobile, Alabama, branch. Norsworthy testified that, although Morgan Stanley could not locate the original agreement signed by Dees, the terms of the form agreement used at the time the account was opened are known and that Dees would have had to sign that form agreement in order to open the IRA. Moreover, Norsworthy testified as to the notices periodically sent by Morgan Stanley to Dees between 2005 and his death informing him that it had no designated-benefieiary form on file.
On September 29, 2015, the trial court entered an order granting Martha Dees’s motion for a summary judgment and denying the children’s motion for a summary judgment. The court concluded that neither side had established that Dees had provided Morgan Stanley with a beneficiary-designation form and that, therefore, the default provisions of the IRA agreement applied. Thus, in accordance with those provisions, the trial court ordered Morgan Stanley to distribute the proceeds of the IRA to Martha Dees. The court dismissed all remaining claims sua sponte, including Martha Dees’s tort claims against Morgan Stanley. The children appealed, and Martha Dees filed a cross-appeal, contending that, if the trial court’s judgment is reversed on appeal, its dismissal of her tort claims against Morgan Stanley is also due to be reversed.
II. Standard of Review
Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P.
“Our standard of review for a summary judgment is as follows:
“ ‘We review the trial court’s grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the non-movant must then present substantial evidence creating a genuine issue of material fact. Id. “We review the evidence in a light most favorable to the nonmovant,” 943 So.2d at 795. We review questions of law de novo. *813 Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala.2006).’ ”
Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 793 (Ala.2007) (quoting Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006)).
III. Analysis
This case turns on a single question: Are the children the beneficiaries of Dees’s IRA? As to this question, however, issues of fact abound.
Here, the undisputed evidence establishes that Dees opened an IRA with Dean Witter—now Morgan Stanley—in 1984. The uncontradicted testimony indicates that the IRA was governed by a standard form agreement, the terms of which are not in dispute. The original signed agreement and any beneficiary-designation forms that may have existed were lost as a result of the terrorist attack of September 11, 2001.[4] Nearly all other relevant facts, however, are disputed.
First, we note that the default-beneficiary provision does not appear to apply to a situation where, as potentially happened here, an otherwise valid beneficiary designation is lost or destroyed after acceptance by the company. See American Int’l Life Assur. Co. of New York v. Vazquez, No. 02 Civ. 0141, Feb. 25, 2003 (S.D.N.Y.2003) (not selected for publication in the Federal Supplement)(holding that a similar default-beneficiary provision did not apply when the beneficiary designation was unavailable because it was destroyed or lost as a result of terrorist attack of September 11, 2001). Thus, there is a question as to whether Dees designated a beneficiary when he opened the IRA or at any time before Dean Witter’s records were destroyed on September 11, 2001. There is evidence suggesting that, in fact, Dees designated the children as contingent beneficiaries at the time he opened the account. The children all testified that Dees informed them that he did just that. Dees’s friend also testified that Dees told him that his “retirement account” would pass to his children should Mary Helen Dees predecease them. There is, however, also conflicting evidence.
The children of Dees’s second wife, Ar-dis Dees, testified that Dees told them he wanted to leave everything to Ardis. Indeed, Allain testified that she saw a copy of a beneficiary-designation form signed by Dees that named Ardis as the sole beneficiary, naming no contingent beneficiaries. If Dees properly submitted a change-of-beneficiary designation naming Ardis as the sole beneficiary, then, because Ardis predeceased Dees, the default-beneficiary provisions would apply, and the death benefits are due to be paid to Martha Dees as surviving spouse. However, even if Al-lain’s testimony is believed, there remains a question of fact as to whether Dees complied with the requirements necessary to effect a change of the beneficiary. See Gibson v. Henderson, 459 So.2d 845 (Ala. 1984) (noting existence of question of fact as to whether decedent had complied with policy provisions regarding change of beneficiary that precluded summary judgment).
Furthermore, beginning in 2005 Morgan Stanley periodically sent notices to Dees indicating that it had no beneficiary designation for his account on file. Martha Dees testified that Dees told her that he *814 wanted the IRA to go to her upon his death. She, therefore, implies that Dees relied upon these notices, believing that the default provision of the IRA agreement furthered his estate-planning wishes. Yet there is also evidence indicating that Dees had been diagnosed with Alzheimer’s disease in 2002, and his mental capacity to make estate-planning decisions following that diagnosis appears to be in question. See Argo v. Moncus, 721 So.2d 218 (Ala.Civ.App.1998) (holding that existence of question of fact as to decedent’s mental capacity in case challenging deed transfer precluded summary judgment).
In short, there are myriad genuine issues of material fact that make summary judgment improper in this case. Accordingly, the summary judgment entered in favor of Martha Dees is due to be reversed.
With regard to Martha Dees’s cross-appeal related to the dismissal of her tort claims against Morgan Stanley, we note that Martha Dees stipulated that those claims were asserted in the alternative, in the event that the trial court determined that the children were the proper beneficiaries of Dees’s IRA. Presumably as a result of that stipulation, the trial court, in entering a summary judgment in favor of Martha Dees, sua sponte dismissed Martha Dees’s claims against Morgan Stanley. Martha Dees argues that, if the summary judgment in her favor is reversed, the dismissal of her claims against Morgan Stanley is likewise due to be reversed. Morgan Stanley has filed no appellee’s brief in response to Martha Dees’s cross-appeal. We agree that, in light of our reversal of the summary judgment in favor of Martha Dees, the dismissal of her claims against Morgan Stanley is also due to be reversed.
IV. Conclusion
The judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.
1150107—REVERSED AND REMANDED.
1150128—REVERSED AND REMANDED.
STUART, BOLIN, WISE, and BRYAN, JJ., concur.
SHAW, J., concurs in the result.
PARKER and MURDOCK, JJ., dissent.

. The letter quotes a more recent version of the Morgan Stanley standard form IRA agree *811 ment. It is unclear from the record before us whether this new form was accepted by Dees, but the parties do not contend that there are any differences between the forms that are material to the outcome of this case.

. For example,. a note on Dees’s account statement dated March 2007 stated:
“IMPORTANT: Morgan Stanley does not have a beneficiary designation on file for this account. Please contact your Financial Advisor, Wealth Advisor or local branch office as soon as possible to execute a new IRA Adoption Agreement and/or IRA Designation of Beneficiary form. Thank you.”

. On the motion of all the parties, the trial court stayed the claims against Morgan Stanley until resolution of the beneficiary issue.

. Given the destruction of the documents, the contents of the original documents may be proven by secondary evidence. See Rule 1004, Ala. R. Evid. Here, it is undisputed that, at the time it was established, the IRA would have been governed by the standard IRA-2000 Adoption Agreement then used by Dean Witter, the terms of which are undisputed. Moreover, contrary to the children’s assertion, the agreement does not violate the Statute of Frauds.