The defendant below, E. Gaylon McCollough, appeals from the summary judgment in favor of the plaintiff, Regions Bank. We affirm.
 Facts and Procedural History
McCollough, Larry Brock, and James Bailey were members in Medical Visions of Alabama, LLC, a limited liability company. On September 28, 2001, McCollough entered into a commercial guaranty contract with Regions Bank. Brock and Bailey entered into similar contracts with Regions Bank. In these contracts, they each agreed to pay differing portions of Medical Visions' indebtedness to Regions Bank. McCollough agreed to pay 20%, Brock agreed to pay 30%, and Bailey agreed to pay 20%. The remaining 30% of Medical Visions' indebtedness to Regions Bank was to be paid by persons or business entities the parties refer to as the collective limited *Page 407 
guarantors. The parties do not identify the collective limited guarantors.
According to the commercial guaranty contracts, Medical Visions, on September 28, 2001, had executed a promissory note payable to Regions Bank in the amount of $2.1 million. However, the parties have not included this promissory note in the record. A second promissory note dated April 8, 2002, is included in the record. The second note was also for the amount of $2.1 million.[1] On December 19, 2002, the collective limited guarantors paid 30% of the indebtedness of Medical Visions then outstanding, totaling $615,328.97. After that payment, the principal balance was $1,414,764.97. McCollough, Brock, and Bailey, though, failed to pay the percentages they had agreed to pay in their respective commercial guaranty contracts.
On February 26, 2004, Regions Bank sued Medical Visions, McCollough, Brock, and Bailey, alleging breach of contract and seeking an attorney fee. Regions Bank also sued Raymond James Associates, Inc., which had submitted a securities account control agreement to Regions Bank to secure McCollough's commercial guaranty contract, alleging breach of contract.
On August 9, 2004, Regions Bank filed a motion for a partial summary judgment, arguing that Medical Visions was in default under the second promissory note and that McCollough, Brock, and Bailey were in default under the terms of their respective commercial guaranty contracts. In support of its motion, Regions Bank attached copies of the second promissory note, the three commercial guaranty contracts, and affidavits from Regions Bank employees and two attorneys. On October 13, 2004, Medical Visions and McCollough filed a response to Regions Bank's motion. It is unclear from the record whether Brock and Bailey filed a response. A hearing was held on the motion on October 15, 2004. On November 5, 2004, Medical Visions and McCollough filed a "Motion for Additional Time to Respond to Plaintiff's Motion for Summary Judgment before Court's Order." In their motion, Medical Visions and McCollough claimed that they had not received Regions Bank's answers to discovery requests and that they had not been able to depose representatives from Regions Bank, despite their requests. They further stated that the evidence sought by discovery is necessary for them to respond to Regions Bank's motion for a partial summary judgment.
The trial court never ruled on the motion for additional time; it entered its judgment in favor of Regions Bank and against Medical Visions, McCollough, Brock, and Bailey on November 23, 2004. Regions Bank's claim against Raymond James remains pending. The trial court made its judgment against Medical Visions, McCollough, Brock, and Bailey final pursuant to Rule 54(b), Ala. R. Civ. P.
On December 6, 2004, McCollough and Medical Visions filed a motion, asking that the trial court
 "[r]econsider its November 23, 2004 Order . . . and as grounds therefor sets down and assigns the following:
 "1. [Medical Visions and McCollough] were denied an opportunity to depose material and relevant corporate representatives of the Plaintiff, Regions Bank, prior to the court's hearing on this Plaintiff's Motion for Partial Summary Judgment.
 "2. [Medical Visions and McCollough] previously filed their Motion *Page 408 
for Extension of Time to file additional Response to Plaintiff's Motion for Summary Judgment prior to court's ruling citing the fact that they were denied the opportunity to depose these above-mentioned relevant corporate representatives. . . .
 "3. [Medical Visions and McCollough] have been greatly prejudiced by the above-mentioned denial of their right to discovery."
Regions Bank submitted its response to Medical Visions and McCollough's motion on December 10, 2004, arguing that the motion was not a proper Rule 59(e), Ala. R. Civ. P., motion, to alter, amend, or vacate the judgment, because Medical Visions and McCollough are not asking the trial court to reconsider its ruling on the summary judgment but are asking for reconsideration of their motion for additional time. The trial court denied the motion for reconsideration on January 5, 2005.
McCollough filed a notice of appeal on February 9, 2005. Regions Bank filed a motion to dismiss the appeal as untimely on March 1, 2005.
 I. Was the appeal timely?
Regions Bank argues that this appeal was not filed within the time limit set out in Rule 4, Ala. R.App. P. Regions Bank argues that because Medical Visions and McCollough's motion to reconsider was not an appropriate Rule 59(e), Ala. R. Civ. P., motion, it did not extend the time in which McCollough could file his appeal.
This Court stated in Ex parte Johnson, 673 So.2d 410,412 (Ala. 1994): "The Alabama Rules of Civil Procedure make no reference to a `motion to reconsider.' However, this Court treats a motion so styled as a Rule 59(e) motion to `alter, amend, or vacate' a judgment, if it complies with the guidelines for such post-trial motions set out in Rule 59."See also Ex parte Troutman Sanders, 866 So.2d 547, 549
(Ala. 2003).
According to Rule 4(a)(3), Ala. R.App. P., "[t]he filing of a post-judgment motion pursuant to Rules 50, 52, 55, or 59 of the Alabama Rules of Civil Procedure . . . shall suspend the running of the time for filing a notice of appeal." This Court has held on numerous occasions that the "proper filing of a Rule 59(e) motion `suspend[s] the running of the time for filing a notice of appeal' Ala. R.App. P. 4(a)(3)." Ex parte TroutmanSanders, 866 So.2d at 549. See also Waters v. J.I.Case Co., 548 So.2d 454 (Ala. 1989); Evans v.Waddell, 689 So.2d 23, 26-27 (Ala. 1997).
Therefore, the issue presented here is whether the motion filed by Medical Visions and McCollough was a valid Rule 59(e) motion, therefore suspending the time in which to file an appeal. Rule 59(e) does not give much guidance, stating simply that "[a] motion to alter, amend, or vacate the judgment shall be filed not later than thirty (30) days after entry of the judgment." However, we note that the Alabama Court of Civil Appeals stated in Brown v. Murray Security Guard Co., 404 So.2d 79, 81
(Ala.Civ.App. 1981), that "both federal and state courts mandate that the rules of procedure be `liberally construed to achieve justice.' Smith v. Jackson Tool Die, Inc., 426 F.2d 5, 8 (5th Cir.1970)."
This Court in Moore v. Glover, 501 So.2d 1187
(Ala. 1986), provided a basis for determining whether a motion to reconsider is proper.
 "A motion for reconsideration made after the entry of an order granting a summary judgment is not proper where the motion is not directed to a reconsideration of the evidence upon which summary judgment was based or does not seek a reargument of the legal considerations underlying the initial judgment, but is instead simply used by plaintiff to *Page 409 
submit evidence, belatedly, in opposition to the defendant's motion for summary judgment."
501 So.2d at 1189. This Court held that the motion to reconsider in Moore had been properly denied because it was "not intended to have the trial court reconsider the evidence on which it had based its order granting summary judgment," but to reconsider the summary-judgment order in light of new evidence. 501 So.2d at 1188-89. In order to present new evidence in a motion to alter, amend, or vacate a summary judgment, "`the plaintiff must show circumstances which prevented his presenting evidence to counter that offered in support of the summary judgment.'" 501 So.2d at 1189-90 (quotingWillis v. Ideal Basic Indus., Inc., 484 So.2d 444, 445
(Ala. 1986)).
In Green Tree Acceptance, Inc. v. Blalock,525 So.2d 1366, 1369 (Ala. 1988), this Court discussed the holding inMoore:
 "[T]his Court recently decided a case analogous to the instant case involving the introduction of new evidence in a post-judgment motion. Moore v. Glover, 501 So.2d 1187 (Ala. 1986). In that case the Court held that when new — as opposed to newly discovered — evidence was first introduced in a post-judgment motion and no reason or justification was given for failing to present the evidence while the summary judgment motion was pending, the trial judge could not consider the new evidence. Moore, 501 So.2d at 1189. Nevertheless, if the plaintiff had `offered a proper explanation for his failure to offer that additional evidence in response to defendant's motion for summary judgment, the trial court could have considered it in deciding whether to amend or vacate its entry of summary judgment.' Id.
(emphasis supplied). Furthermore, `[a]ny reasonable explanation of the party's failure to offer evidence in response to a motion for summary judgment [would] suffice, but this does not mean that under the guise of a Rule 59(e) motion a party [could] belatedly submit available evidence in opposition to a motion for summary judgment.' Moore, 501 So.2d at 1191 (Torbert, C.J., concurring specially)."
The language in these cases from this Court indicates that, if a party offers a reasonable explanation for its failure to offer evidence in response to a motion for a summary judgment, then a court can consider the evidence in a Rule 59(e) motion. Here, the motion asked the trial court to reconsider the entry of the summary judgment because Medical Visions and McCollough had not been given the requested time to depose important witnesses. In this motion, McCollough clearly states his reason for failing to offer the evidence necessary to respond to the motion for a summary judgment: the trial court's denial of the earlier filed motion for additional time to complete discovery.
Regions Bank argues that the motion to reconsider was improper and that it thus should not suspend the time within which to file an appeal. However, although the motion to reconsider inMoore was found to be improper, this Court never stated that the fact that it was improper did not suspend the time to appeal. The remedy for the improper Rule 59(e) motion inMoore was simply for the trial judge to deny the motion. Moore, 501 So.2d at 1188.
Regions Bank relies on Morris v. Merchants National Bank ofMobile, 359 So.2d 371 (Ala. 1978), in arguing that the time to appeal should not be suspended by the filing of an improper Rule 59(e) motion. However, this Court offered the following reason for its holding in Morris that the time to appeal was not suspended: *Page 410 
 "[E]xamination of the post-trial pleadings reveals that in manner and form their purpose was either to file another amended complaint or to obtain the trial court's consent to file another amended complaint. They were not designed to have the trial court reconsider the evidence on which the summary judgment was based."
359 So.2d at 373-74. This Court held that the motion was not a proper Rule 59(e) motion because it was not actually a motion to reconsider the evidence on which the summary judgment was based.
Here, however, the motion to reconsider requested that the trial court reconsider the granting of the motion for a partial summary judgment. Therefore, in construing the requirements of Rule 59(e) so as to achieve justice, we hold that the motion to reconsider was a proper Rule 59(e) motion that should have suspended the time in which to file an appeal. Because the appeal was filed within 42 days of the denial of the motion to reconsider, the appeal was timely.
 II. Was the summary judgment proper?
Our standard of review for a summary judgment is as follows:
 "We review the trial court's grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bookman v. WCH, L.L.C., 943 So.2d 789 (Ala. 2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the nonmovant must then present substantial evidence creating a genuine issue of material fact. Id. `We review the evidence in a light most favorable to the nonmovant.' 943 So.2d 795 We review questions of law de novo. Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala. 2006)."
Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342
(Ala. 2006). "`In a breach of contract action, a summary judgment is properly entered only where the contract is unambiguous and the facts are undisputed.'" Bank of Brewton, Inc. v.International Fid. Ins. Co., 827 So.2d 747, 752
(Ala. 2002) (quoting Britt v. Gonzalez, 710 So.2d 928,930 (Ala.Civ.App. 1998)).
McCollough argues that the trial court should not have granted Regions Bank's motion for a partial summary judgment because, he says, the contract between Regions Bank and McCollough was ambiguous. (McCollough's brief, pp. 4-7.) This Court stated inFabArc Steel Supply, Inc. v. Composite Construction Systems,Inc., 914 So.2d 344, 358 (Ala. 2005):
 "`[I]f the trial court finds the contract to be ambiguous, it "must employ established rules of contract construction to resolve the ambiguity." Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala. 1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
 "`"If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity."
 "`Id. at 949. Where factual issues arise the resolution of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting Dev. Co., 585 So.2d 853 (Ala. 1991).'
"Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400, 405
(Ala. 2001)." *Page 411 
The issue, therefore, is whether the commercial guaranty contract between McCollough and Regions Bank was ambiguous. This Court has discussed ambiguity of contracts on several occasions. In Warren v. Rasco, 457 So.2d 399, 401
(Ala. 1984), this Court stated: "According to Black's Law Dictionary, language in a contract is `ambiguous' if it is `reasonably capable of being understood in more than one sense,' citing City of Sioux Falls v. Henry Carlson Company,Inc., 258 N.W.2d 676, 679 (S.D. 1977)." In other words, "`[a]n ambiguity exists where a term is reasonably subject to more than one interpretation.'" Ex parte Awtrey RealtyCo., 827 So.2d 104, 107 (Ala. 2001) (quoting Cannon v.State Farm Mut. Auto. Ins. Co., 590 So.2d 191, 194
(Ala. 1991)). Conversely, `"[a]n "instrument is unambiguous if only one reasonable meaning clearly emerges."'" Ex parteGardner, 822 So.2d 1211, 1217 (Ala. 2001) (quotingReeves Cedarhurst Dev. Corp. v. First Amfed Corp.,607 So.2d 184, 186 (Ala. 1992), quoting in turn Vainrib v.Downey, 565 So.2d 647, 648 (Ala.Civ.App. 1990)).
The commercial guaranty contract between McCollough and Regions Bank contains the following relevant provisions:
 "AMOUNT OF GUARANTY. This is a guaranty of payment of 20.000% of the Note, including without limitation the principal Note amount of Two Million One Hundred Thousand 00/100 Dollars ($2,100,000.00).
 "GUARANTY. For good and valuable consideration, E GAYLON McCOLLOUGH (`Guarantor') absolutely and unconditionally guarantees and promises to pay to REGIONS BANK (`Lender') or its order, in legal tender of the United States of America, 20.000% of the Indebtedness (as that term is defined below) of MEDICAL VISIONS OF ALABAMA, LLC (`Borrower') to Lender on the terms and conditions set forth in this Guaranty. Guarantor agrees that Lender, in its sole discretion, may determine which portion of Borrower's indebtedness to Lender is covered by Guarantor's percentage guaranty.
 ". . . .
 "INDEBTEDNESS GUARANTEED. The indebtedness guaranteed by this Guaranty includes the Note, including (a) all principal, (b) all interest, (c) all late charges, (d) all loan fees and loan charges, and (e) all collection costs and expenses relating to the Note or to any collateral for the Note. Collection costs and expenses include without limitation all of Lender's attorneys' fees.
 ". . . .
 "GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time . . . to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose. . . .
 ". . . .
 "DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty.
 ". . . .
 "Indebtedness. The word `indebtedness' means Borrower's indebtedness to Lender as more particularly described in this Guaranty.
 ". . . .
 "Note. The word `Note' means the promissory note dated September 28, 2001, in the original principal amount of $2,100,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings *Page 412 
of, consolidations of, and substitutions for the promissory note or agreement.
 ". . . .
 "GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THE COMMERCIAL GUARANTY AND GUARANTOR AGREES TO ITS TERMS. THIS COMMERCIAL GUARANTY IS DATED SEPTEMBER 28, 2001. THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW."
(Capitalization in original.)
McCollough argues that this contract is ambiguous in its discussion of the "indebtedness"; whether the indebtedness to which the contract refers is the original principal of $2.1 million or the principal remaining after the collective limited guarantors paid their portion, leaving approximately $1.4 million in principal. He cites Kirkland Co. ofAnniston v. A M Food Service, Inc., 579 So.2d 1278,1282 (Ala. 1991), to support his position. In Kirkland, the contract was a rental agreement that contained two different provisions concerning when rent was payable.
 "Paragraph one unambiguously states that rent was due to be paid to Kirkland on the first day of each month. Had the lease contained nothing more concerning the time when payment was due, no ambiguity would exist. However, paragraph four provides only that the rent was `payable monthly, in advance.' It is not certain from a reading of this phrase that the rent was due on the first of the month. We conclude that the contract is ambiguous and is susceptible of more than one meaning. . . ."
579 So.2d at 1282. Because the two provisions concerning when the rent was to be paid differed, this Court held that the contract was ambiguous.
Here, however, the commercial guaranty contract is not ambiguous. The contract mentions the principal owed numerous times, and all references are consistent. First, in the "Amount of Guaranty" section, the contract states that McCollough will pay 20% of the principal note amount of $2.1 million. The second time the contract mentions the amount McCollough owes, it states that McCollough "absolutely and unconditionally guarantees and promises to pay . . . 20.000% of the Indebtedness (as that term is defined below). . . ." In the "Indebtedness Guaranteed" section, the contract states that "[t]he Indebtedness guaranteed by this Guaranty includes the Note, including (a) all principal. . . ."
McCollough argues that the "Indebtedness Guaranteed" section of the contract causes the contract to be ambiguous because, he says, it is unclear as to whether the principal on the note refers to the $2.1 million or the $1.4 million amount. However, McCollough fails to recognize the definition of "Note" that is clarified in the last section of the contract. The definition of "Note" as "the promissory note dated September 28, 2001, in the original principal amount of $2,100,000.00 from Borrower to Lender" clarifies that the contract is referring to the principal amount of $2.1 million.[2] Therefore, there is no ambiguity concerning the amount McCollough owed. *Page 413 
Furthermore, another clause in the contract also clarifies what McCollough owes Regions Bank and refutes McCollough's theory. The contract states:
 "Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time . . . to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose."
(Emphasis added.) The "without lessening" clause clarifies that McCollough's liability is not lessened by Regions Bank's dealing with other guarantors, such as the payment made by the collective limited guarantors to cover their 30% portion of the indebtedness. Therefore, McCollough owed 20% of the original amount of the note, and the commercial guaranty contract was not ambiguous.
We note that the result McCollough seeks would be an illogical conclusion for this Court to draw based on the contract. InEx parte Awtrey Realty, 827 So.2d at 107-08, this Court stated:
 "`The words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract.' Smith v. Citicorp Person-To-Person Fin. Ctrs., Inc., 477 So.2d 308, 310 (Ala. 1985), citing Food Serv. Distribs., Inc. v. Barber, 429 So.2d 1025 (Ala. 1983); Sisco v. Empiregas, Inc., 286 Ala. 72, 237 So.2d 463 (1970). `Ambiguities will not be inserted into contracts by strained and twisted meaning where no such ambiguities exist.' P S Business, Inc. v. South Cent. Bell Tel. Co., 466 So.2d 928, 931
(Ala. 1985). . . ."
If this Court were to twist this contract to conclude that the contract was ambiguous as to the amount McCollough owed Regions Bank, we would be agreeing with McCollough that the contract may mean that he owed only 20% of the amount remaining after the collective limited guarantors had paid their portion of the indebtedness. This conclusion simply does not make sense. Were the principal each of the guarantors owed reduced every time another guarantor paid his portion, then everyone would wait for the others to pay first. This would also be illogical because Regions Bank would not get the full 100% of what it had lent the parties, but only a portion of the $2.1 million.
We refuse to accept an interpretation of the commercial guaranty contract that could lead to this conclusion. Therefore, based on the plain language and the definitions in the contract, the "without lessening" clause, and the logical conclusion of what the parties intended in making this contract, there is but one reasonable meaning: that McCollough owed 20% of the original principal amount of $2.1 million. Therefore, the commercial guaranty contract is not ambiguous, and the trial court was correct in granting Regions Bank's motion for a partial summary judgment.
Because we hold that the summary-judgment motion was properly granted, we need not address the issue of unjust enrichment as an alternative theory of recovery.
AFFIRMED.
NABERS, C.J., and SEE, HARWOOD, and STUART, JJ., concur.
[1] Apparently the promissory note dated April 8, 2002, was not in addition to the note referred to in the commercial guaranty contracts as having been executed on September 28, 2001, but was a replacement for that note.
[2] The record contains only a promissory note dated April 8, 2002; however, that note is for $2.1 million as well. Because the parties did not mention this discrepancy, we assume that the April 8 note is a replacement of this September 28, 2001, note mentioned in the guaranty. *Page 414