STUART, Justice.
Christopher K. Kuehn sued Martin von Sury, alleging breach of contract. The trial court entered a summary judgment for Kuehn. Von Sury appeals. We affirm in part, reverse in part, and remand.

Facts and Procedural History

The record indicates that in January 1995 Von Sury asked Kuehn, an attorney, to represent him in various international business dealings and investments. The two then entered into a retainer agreement dated May 1995, which indicates that Von Sury agreed to pay Kuehn to represent him in a certain matter at a rate of $175 per hour and to pay for Kuehn’s expenses. The retainer agreement further provides that unpaid amounts earn interest at a rate of 1.25% per month and that Von Sury agreed to pay Kuehn’s attorney fees for any action against Von Sury to recover outstanding fees and expenses.
The evidence indicates that from January 1995 until May 2000, Von Sury paid Kuehn regularly. In June 2000, Von Sury started making only partial payments. In March 2003, Von Sury indicated in an email[1] that he could not make a payment *313 “right now” but that he hoped to resume payment in May 2008. Kuehn received his last payment in the amount of $2,202.50 from Von Sury in October 2004. In another e-mail dated December 3, 2007, Von Sury indicated that he would make a payment the following week. On December 8, 2007, Von Sury stated in an e-mail that he expected his financial issues to be resolved by Christmas and that he would “transfer the funds to [Kuehn] immediately.” In an e-mail dated April 24, 2008, Von Sury wrote:
“Dear Christopher
“It has been a long time since I have been in touch with you. My head was mostly ‘under water.’ Today I was told that the banker in charge has signed the payment authorization on behalf of HSBC London and has forwarded it to HSBC.... He said, in the presence of my attorney, that I would have the funds in my account on Monday evening or Tuesday at the latest.
“After all these years of reversals, frustration and existential fears I believe— on the basis of the factual situation— that this time period is coming to an end. Upon receipt of the funds I will send you a first payment of $50,000.
“With best regards,
“Martin”
Kuehn received his last e-mail from Von Sury in August 2008. Von Sury indicated in the e-mail that he would contact Kuehn by the end of the month. According to Kuehn, Von Sury did not contact him.
In October 2008, Kuehn sued Von Sury, alleging that Von Sury had breached the retainer agreement and owed him $112,894.47 for representing Von Sury, $66,325.46 in interest on the unpaid amount, and $37,627.73 in attorney fees for collection of the debt. Kuehn attached to his complaint a copy of the retainer agreement signed by Von Sury and a copy of an invoice detailing the services Kuehn had provided Von Sury, the fees charged and expenses incurred on Von Sury’s behalf, and Von Sury’s payment history.
On March 5, 2009, Von Sury answered, denying that he owed Kuehn any money. On April 2, 2009, Kuehn moved for a summary judgment, stating:
“[Kuehn] is an attorney who was retained in 1995 by [Von Sury] to assist him with his international business dealings and investments. Over the years since being retained [Kuehn] performed professional services for [Von Sury] and submitted itemized invoices to him. [Von Sury] made payments against the invoices without any objections. The last payment received by [Kuehn] was posted on October 19, 2004 and credited against the balance then due in the amount of $115,096.97 leaving a principal balance for which suit has been brought of $112,894.47. At no time until the filing of his pro se answer to the complaint has [Von Sury] denied owing [Kuehn] the amount claimed. In fact, as recently as April of 2008, four years after the last payment made by [Von Sury] he sends an email message to [Kuehn] in which he acknowledges his financial difficulty and promises a payment of $50,000.00.”
In support of his motion, Kuehn attached an affidavit explaining Von Sury’s payment history and copies of e-mails sent by Von Sury to Kuehn in which Von Sury acknowledged that he owed Kuehn money.
Von Sury opposed Kuehn’s motion for a summary judgment, arguing that summary judgment was inappropriate because genuine issues of material fact existed. In support of his motion in opposition, Von *314 Sury attached an affidavit in which he stated:
“I am Martin von Sury, a Swiss national, and I have personal knowledge of all recitations of fact set forth herein below.
“(1) While what appears to be my signature on [the retainer agreement] intrigues me, as I don’t recall signing such a document, I am certain that the handwriting above such signature, to-wit: ‘May 5, 1995,’ is not mine, presumably being that of Mr. Kuehn. Furthermore, the supposed date, as so inserted by someone other than myself, fails to coincide with my recollection of the chronological background of my dealings with Mr. Kuehn, particularly concerning Wuestec Medical, Inc. In fact, it was not until December 1996 that the initial business of that entity was activated. ... Accordingly, my legal counsel will seek production of the original document for due and proper evaluation in terms of its authenticity, which I question.
“(2) It is likewise curious that the initial entry [on Kuehn’s invoice for services] is some four (4) years next following the date [on the retainer agreement] to-wit: January 15,1995. Certainly, not only should Mr. Kuehn explain such a gap in time, he should be compelled to produce all invoices corresponding to the abbreviated entries [in the invoice] together with documentary evidence of the alleged services rendered, especially those described as ‘Mobile — FLAT FEE’ particularly given [the language in the retainer agreement], to-wit: ‘On a case by case basis we may agree to a different hourly rate, a fixed fee or a contingency fee for specific future projects.’ (emphasis added). Accordingly, I dispute that all services thereupon described [in the invoice] were so rendered, if at all, solely for my benefit and/or were performed by Mr. Kuehn based upon or in reliance upon the terms of his said [retainer agreement].
“(3) Further still, investigation is due to be conducted as to whether and in what amounts Mr. Kuehn has sought recovery of attorney fees from other parties involved in the pertinent transactions concerning which he claims to have rendered services, without which revelation an accurate accounting of what share, if any, I might owe him therefore cannot be made.
“(4) I have in the past afforded Mr. Kuehn my complete trust. I, therefore, have taken his word without question as to most all aspects of our dealings, including his assertion that I owed him substantial attorney fees. However, based upon his more recent aggressive tactics I have concluded that he must be having his own financial difficulties unrelated to our association. Accordingly, while I have long assumed my personal share in attorney fees that he has asserted were due and payable to him was significant, I earnestly believe that Mr. Kuehn might well be guilty of overreaching and/or has taken advantage of my prior trust in him. I now know that one must look behind the facade and insist upon a full and complete disclosure of all matters relevant to the assertion he makes associated with the supposed services for which he claims compensation, and I have instructed my counsel ... to pursue such an evaluation in earnest.
“(5) The e-mails [submitted by Mr. Kuehn in support of his motion for a summary judgment] were issued by me during the aforesaid period of my utmost trust and confidence in him. Now I must conclude that such trust was misplaced. Apparently, Mr. Kuehn believes me a convenient target whereby he might right his financial ship, so I *315 must respectfully decline to be victimized in such a manner. Therefore, any conclusions that might otherwise be drawn from the content of such e-mails would be unreliable. Furthermore, I contest the authenticity thereof in the first place.”
On June 12, 2009, the trial court, without providing any reasons, entered a summary judgment for Kuehn.

Standard of Review

“ ‘ “On appeal, this Court reviews a summary judgment de novo.” DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So.2d 454, 459 (Ala.2008) (citing Ex parte Essary, 992 So.2d 5, 8 (Ala.2007)). In order to uphold a summary judgment, we must determine that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. “When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.” Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952 (Ala.2004). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see also § 12-21-12(d), Ala.Code 1975. In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant. Johnny Ray Sports, Inc. v. Wachovia Bank, 982 So.2d 1067, 1071 (Ala.2007). “Finally, this Court does not afford any presumption of correctness to the trial court’s ruling on questions of law or its conclusion as to the appropriate legal standard to be applied.” DiBiasi, 988 So.2d at 459.’
“Catrett v. Baldwin County Elec. Membership Corp., 996 So.2d 196, 200 (Ala.2008).”
McLemore v. Hyundai Motor Mfg. Alabama, LLC, 7 So.3d 318, 327 (Ala.2008).

Discussion

Von Sury contends that the trial court erred in entering a summary judgment for Kuehn. In McCollough v. Regions Bank, 955 So.2d 405, 410 (Ala.2006), this Court recognized that a summary judgment in a breach-of-contract action is appropriate only where the contract is unambiguous and the facts are undisputed.
First, Von Sury argues that a summary judgment is improper because, he says, the retainer agreement is ambiguous. According to Kuehn’s brief, the following language in the retainer agreement makes the contract ambiguous:
“ ‘On a case by case basis we may agree to a different hourly rate, a fixed fee or a contingency fee for specific future projects. As such we have agreed that for the planned private placement of shares of Wuestec Medical Inc., my hourly rate will be reduced to $125, but that at successful completion of the private placement my accumulated hours will be recalculated at an hourly rate of $225. Work that is not directly related to the private placement of the shares of Wuestec Medical Inc., will be billed at my hourly rate of $175 and to the extent such work may be to the benefit of Wuestec Medical Inc., you will settle this internally with Wuestec Medical Inc.’ (Emphasis added.)”
Von Sury reasons in his brief to this Court that the foregoing language
*316 “expressly provide[d] for the prospect of future legal services to be performed at varying rates, so it would be patently unfair to blithely accept [Kuehn’s] unilateral, self-serving itemization of purported legal services for which he seeks a judgment versus [Von Sury] especially given the fact that such itemization commences with entries some several years next succeeding the supposed date of the purported retainer agreement.”
The language in the retainer agreement, however, is not ambiguous. It simply provides that on a case-by-case basis Kuehn and Von Sury can negotiate varying rates for legal services to be performed for Von Sury by Kuehn.
Von Sury also maintains that a summary judgment is improper because, he says, the statements in his affidavit— that he did not remember signing the retainer agreement, that he questioned whether the legal services Kuehn listed on the invoice attached to the complaint were rendered for his benefit, and that his representations in the e-mails from him to Kuehn are “unreliable” — present substantial evidence creating genuine issues of material fact.
Kuehn presented evidence of the existence of a retainer agreement between him and Von Sury. He also submitted an invoice for his services and expenses, which indicates his representation of Von Sury and his fees and expenses from January 1999 through February 2003. The invoice also included the payments made by Von Sury from April 1999 through October 2004. He further submitted e-mails from Von Sury in which Von Sury recognized that he owed Kuehn money and told Kuehn that payment was forthcoming. Therefore, Kuehn presented prima facie evidence of his breach-of-contract claim and that he was entitled to a judgment as a matter of law. The burden then shifted to Von Sury to present substantial evidence creating a genuine issue of material fact. At best, Von Sur/s affidavit presents only speculation and conjecture. Von Sury does not dispute that he entered into the retainer agreement with Kuehn or that he owes Kuehn money. Although Von Sury attempts to create genuine issues of material fact with regard to the accuracy of the charges in the invoice, he presents only speculation. Consequently, Von Sury does not present “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Therefore, the summary judgment in Kuehn’s favor on the breach-of-contract claim was proper.
Lastly, Von Sury contends that the trial court erred in entering a summary judgment for Kuehn in the amount of $37,627.73 as an attorney fee for .this breach-of-contract litigation. In Highlands Underwriters Insurance Co. v. Elegante Inns, Inc., 361 So.2d 1060, 1066 (Ala.1978), this Court stated:
“When attorneys’ fees or other expenses of litigation are recoverable as damages, they can be recovered only to the extent that they are necessarily incurred and reasonable in amount. 25 C.J.S. Damages § 91(2), p. 981. The fee charged by counsel for plaintiff is not conclusive on the court of the reasonableness of the fee to be awarded as damages. Such fees must be based, not upon the charges made in the case, but upon evidence showing the service rendered and the reasonable value thereof. United Bonding Ins. Co. v. Presidential Ins. Co., 155 So.2d 635 (Fla.App.1963).”
In his brief to this Court, Kuehn concedes that the case should be remanded for the trial court to assess the attorney *317 fees recoverable in this action in accordance with the law. Therefore, we reverse the trial court’s summary judgment with regard to the attorney-fee award for this breach-of-contract litigation and remand this case for the trial court to determine a reasonable attorney fee in accordance with the law.

Conclusion

The judgment of the trial court is reversed insofar as it awards Kuehn an attorney fee of $37,627.73. In all other respects, the judgment is affirmed. This cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, BOLIN, and MURDOCK, JJ., concur.

. The record contains copies of several emails between Kuehn and Von Sury. The emails are written in German and have been translated by Kuehn. Von Sury does not dis *313 pute the accuracy of Kuehn’s translation of these documents.