PITTMAN, Judge.
 

 Harold L. Kendrick and Dianne S. Kendrick appeal from a judgment entered by the Chambers Circuit Court in a boundary-line dispute. We reverse and remand.
 

 Harold Kendrick and Fred Kendrick are brothers who have been coterminous landowners for more than 30 years. Harold and his wife Dianne purchased a 25-acre tract of land in 1966. Approximately two
 
 *1002
 
 years later, Fred and his wife
 
 [1]
 
 purchased a 190-acre tract to the west of Harold and Dianne’s property. The parties live within a few hundred yards of each other along a county road. At issue in this case is the ownership of two disputed strips of property: a strip located in front of Harold and Dianne’s home adjacent to the county road and another strip located adjacent to and to the east of an old fence that has served as the east-west boundary of the parties’ respective properties.
 

 In October 2003, Harold and Dianne filed a complaint in the Chambers Circuit Court seeking to quiet title as to their tract and averring that they had adversely possessed the disputed strips of property. Fred filed an answer asserting that he was the rightful owner of the strips and averring that any usage of those strips by Harold and Dianne had been not hostile and adverse to Fred, but had occurred with Fred’s permission. Thereafter, the parties conducted discovery. In August 2005, Fred filed a motion for a summary judgment with supporting materials and exhibits, including copies of both his and Harold’s deposition transcripts, an affidavit of a land surveyor, and a copy of a land survey. Harold and Dianne filed a response in opposition to the summary-judgment motion and attached a copy of the transcript of Harold’s deposition as an exhibit. The trial court entered a summary judgment in favor of Fred. Harold and Dianne filed a postjudgment motion; that motion was denied by the trial court on November 7, 2005. Harold and Dianne filed a notice of appeal; the Alabama Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The sole issue for this court’s review is whether the trial court erred in entering a summary judgment.
 

 “We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing ‘that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law.’ Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmov-ing party and must resolve all reasonable doubts against the movant.
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412 (Ala.1990).”
 

 Bailey v. R.E. Garrison Trucking Co.,
 
 834 So.2d 122, 123 (Ala.Civ.App.2002).
 

 The following propositions of law are pertinent to our resolution of this case. Our Supreme Court has consistently held that “where a case involves a boundary dispute between coterminous landowners, title may be acquired by an adverse possession period of only 10 years.”
 
 E.g., Moss v. Woodrow Reynolds & Son Timber Co.,
 
 592 So.2d 1029, 1030 (Ala.1992);
 
 Sashinger v. Wynn,
 
 571 So.2d 1065, 1067 (Ala.1990);
 
 Sims v. Vandiver,
 
 504 So.2d 250, 252 (Ala.1987). A party claiming ownership of property by adverse possession must prove by clear and convincing evidence that there was “actual, hostile, open, notorious, exclusive, and continuous” possession of the property for the required period of time.
 
 Grooms v. Mitchell,
 
 426 So.2d 820, 822 (Ala.1983). “[T]he burden
 
 *1003
 
 of proof rests upon the party asserting adverse possession, and every presumption is in favor of the holder of legal title.”
 
 Lee v. Brown,
 
 482 So.2d 293, 295 (Ala.1985). “The presence of a fence, which is an outstanding symbol of possession, coupled with normal acts of use in appropriation of the land, sufficiently satisfies the requirements of adverse possession.”
 
 Bearden v. Ellison,
 
 560 So.2d 1042, 1045 (Ala.1990).
 

 Viewing the evidence in the light most favorable to the nonmovants, Harold and Dianne, as we must, we note that when they purchased them 25-acre tract in 1966, Harold and Dianne believed that the western boundary line between their property and the property that was to become Fred and his wife’s property was the location of an old fence. Harold and Dianne also believed that the northernmost portion of their property extended all the way to the nearby county road, which is a dirt road.
 

 With respect to the disputed strip of property adjacent to the county road, the record reveals that after Harold and Dianne had moved to them property in 1966, Harold began clearing the land extending from the front of them home to the county road. Fred, a former Chambers County employee, borrowed a road “scraper” owned by the county and assisted in the process. During the next 35 years, Harold and Dianne planted a garden, set out trees, mowed the grass, spread fertilizer, and planted flowers in the area near the road.
 

 With respect to the disputed strip on the west side of Harold and Dianne’s property, the record indicates that an old fence existed along what Harold and Dianne believed to be the western edge of their property; Harold and Dianne believed that fence to be the dividing line between their property and Fred and his wife’s property. Some time in the mid-1970s, Harold discussed with Fred the prospect of building a new fence to replace the old one. At the time, Fred voiced no objection, and Harold subsequently built a new fence in the same location as the old fence. After the new fence had been built, Harold planted grass on the side of the fence on which Harold and Dianne’s parcel was located and rented a portion of their property to another brother of Harold and Fred’s, who subsequently allowed cattle to graze up to the fence. During this time, Harold also cut the grass on his and Dianne’s side of the fence. After Harold and Fred’s other brother stopped maintaining cattle on Harold and Dianne’s side of the fence, Fred rented Harold and Dianne’s property on their side of the fence for approximately one or two years. By 1980, the “new” fence had fallen into such a state of disrepair that Fred repaired a portion of that fence without moving its location.
 

 In 2003, Fred commissioned a survey of the brothers’ two adjacent tracts. The report of that survey placed Harold and Dianne’s western boundary farther east than the fence line that had separated the parcels for more than 30 years and placed the northernmost boundary of Harold and Dianne’s property on a line farther south than the county road. Fred then personally asserted to Harold that the lines identified by the survey were the true boundary lines between the respective parcels. Harold and Dianne thereafter filed suit to quiet title so as to assert their claim that even if the “true” boundary lines had been the surveyed lines, Harold and Dianne had adversely possessed the property to the fence line and to the county road.
 

 There is substantial evidence in the record to indicate that Harold and Dianne’s possession of both of the disputed strips of property had been actual, open, notorious, and exclusive for more than 30 years. It is undisputed that Harold erected a fence
 
 *1004
 
 in the early to mid-1970s and that he maintained the fence until 1980. At that time, Fred made repairs to the existing fence, and the fence was still in existence at the time of the filing of Harold and Dianne’s complaint.
 

 When one owner of coterminous properties constructs a fence to represent the dividing line between his and another’s property, occupies up to that fence, and claims ownership up to the fence with knowledge of the other landowner, that claim is “presumptively hostile and the possession adverse.”
 
 Garringer v. Wingard,
 
 585 So.2d 898, 900 (Ala.1991);
 
 see also Smith v. Brown,
 
 282 Ala. 528, 535, 213 So.2d 374, 380 (1968). In addition, Harold cultivated the land in front of his house next to the dirt roadway, mowed the grass and farmed to the disputed fence line, and performed various related acts of ownership from 1966 until 2004. “The cultivation of land and gardens, the pasturing of animals, and the mowing of fields are normal acts of use and serve as sufficient possessory acts to meet the requirements of adverse possession.”
 
 Bearden, supra; see also Kubiszyn v. Bradley,
 
 292 Ala. 570, 575, 298 So.2d 9, 13 (1974) (cultivation and growing pasture to fence line were sufficient to support claim of adverse possession). Further, Fred admitted that Harold had openly used the property between Harold and Dianne’s house and the dirt roadway for more than three decades; in fact, Fred conceded that he had never objected to Harold’s usage of the property either up to the fence line or in front of Harold and Dianne’s house.
 

 Fred’s primary argument on appeal is Harold and Dianne’s usage of the disputed strips of property was permissive.
 
 See Tidwell v. Strickler,
 
 457 So.2d 365, 368 (Ala.1984) (stating that possession cannot be presumed to be hostile). If a party’s initial usage is found to have been permissive, continued usage of another party’s land will not ripen into adverse possession by the mere passage of time.
 
 Wallace v. Putman,
 
 495 So.2d 1072, 1076 (Ala.1986). “In order to change possession from permissive to adverse, the possessor must make a clear and positive disclaimer or repudiation of the true owner’s title.”
 
 Moss v. Woodrow Reynolds & Son Timber Co.,
 
 592 So.2d 1029, 1031 (Ala.1992). However, the evidence is disputed as to whether Fred actually gave Harold permission to build the “new” fence and to clear and cultivate the area adjacent to the dirt roadway. Fred testified by deposition that he had had numerous conversations with Harold over the years informing him that the fence was not on the property line, and he testified that, on at least one occasion when Fred had assisted in clearing the northernmost portion of Harold and Dianne’s property, Fred had informed Harold that his property did not extend to the dirt roadway. However, Harold denied that those conversations had transpired. In contrast, Harold testified that he had always assumed that his northernmost property line extended to the roadway and that the location of the old fence was the true boundary line on the westernmost section of his property, that is, until Fred had paid for a survey to be completed and Harold had learned of the results of the survey.
 

 On these facts, whether Harold and Dianne’s possession of the strips was permissive or hostile is, ultimately, a question of fact, not of law. We, therefore, conclude that a question of material fact exists in this case and that, consequently, the trial court erred in entering summary judgment in favor of Fred. Therefore, we
 
 *1005
 
 reverse the summary judgment and remand the cause for further proceedings.
 

 REVERSED AND REMANDED.
 

 CRAWLEY, P.J., and THOMPSON, MURDOCK, and BRYAN, JJ„ concur.
 

 [1]
 

 . Fred's wife was not a party in this action, and it has not been contended that she was a necessary party.