MOORE, Judge.
 

 This is a boundary-line dispute between two landowners. W. Samuel Cousins appeals from a summary judgment entered by the Autauga Circuit Court (“the trial court”) in favor of Patricia McNeel. In that judgment, the trial court declared McNeel the owner of a disputed strip of property (“the disputed property”) located on the eastern boundary of McNeel’s property and on the western boundary of Cousins’s property. The trial court also established the boundary line of the two parcels. We reverse.
 

 Background
 

 Construing, as we must on review of a summary judgment, the evidence in favor of the nonmovant,
 
 see Lloyd Noland Found., Inc. v. HealthSouth Corp.,
 
 979 So.2d 784, 793 (Ala.2007) — in this case, Cousins — the record establishes the following. In May 2000, McNeel received record title to property lying in Sections 4 and 9, Township 17, Range 13, of Autauga County.
 
 [1]
 
 The deed conveying the property to McNeel relied on the existence of a fence running between McNeel’s property and the adjacent property located directly to the east to establish at least a portion of the eastern boundary line of McNeel’s property.
 

 In 1978, George Houston received title to property adjacent to and east of McNeel’s property; Houston’s property was also located in various Sections of Township 17. From Houston’s chain of title, it appears that the property had been in Houston’s family since 1922. It was
 
 *1041
 
 undisputed that a creek was located near a portion of the western boundary of Houston’s property and near a portion of the eastern boundary of McNeel’s property.
 

 In November 2004, Houston conveyed a portion of his property to Cousins by warranty deed; the conveyance to Cousins included property located in Sections 3, 4, 9, and 10 of Township 17, Range 13. It is undisputed that the property conveyed by Houston to Cousins was contiguous to MeNeel’s property. Before the conveyance, Cousins, along with James Gunnels and Cade Gunnels, met with Houston to discuss the boundary lines of the property to be conveyed. Cousins submitted an affidavit regarding what Houston had told them at that meeting:
 

 “Mr. Houston told the three of us that the creek has always formed the western boundary line of the property. He stated that a fence ran along this creek and showed the boundary for many years. He explained that the fence mostly ran along the eastern side of the creek, and ran across the creek a few times close to the road. He explained, however, that the problem with the fence’s location alongside or sometimes across the creek, was that every time the creek flooded, it would wash away portions of the fence and let cows and other animals roam from his property.
 

 “Mr. Houston further told us that to keep the fence from washing away, his father and the adjoining owner agreed to dam the creek and form a pond. They agreed that they would share ownership of this pond, and that it would also serve as the boundary of their two properties. Mr. Houston mentioned that this agreement was made and the pond was built so long ago that workers used buckets and mules to build the dam which formed the pond.
 

 “Mr. Houston went on to say that the pond waters had risen several times to such a level that they feared the dam would give way and flood a hog farm, which was downstream of the former creek. To prevent this, the dam was broken up during the dry season and the creek began to flow as it did before the construction of the pond. The flowing of the creek raised the issue once again of the fence washing away which ran along the creek.
 

 “The Houston family decided at this time, Mr. Houston stated, to back the fence up and move it to a more eastward position, in order to prevent any more fences from washing away. He did not state exactly when this fence was relocated, but I gathered that it has been twenty or more years. This served the purpose of keeping the animals on the property, and is where the fence currently lies today. Mr. Houston never suggested in any way that the fence in the newer position (where it is now) is or has ever been the western boundary of the property. Mr. Houston also never suggested in any way that he was unsure of the exact boundary of the property, or that the boundaries had ever been disputed.
 

 “Mr. Houston has also told me several times that there are no fenced boundaries on the property.”
 

 The affidavit testimony of James Gunnels and Cade Gunnels supported Cousins’s testimony in all significant respects.
 

 Michael S. Vaughn served as Houston’s real-estate agent for the sale of the property to Cousins. According to Vaughn’s affidavit, Houston also had indicated to him that a natural creek formed the western boundary of the property.
 

 Before the closing, Cousins requested a survey to ascertain the boundary lines of the property to be conveyed to him; Ron-
 
 *1042
 
 aid Burke was hired to perform that survey. Burke ascertained from public tax maps that the western boundary of Houston’s property was, in fact, located along the creek. Cousins proceeded with the purchase of the property from Houston. It is undisputed that the warranty deed by which Houston conveyed title to the property to Cousins purported to include the disputed property. After the closing, Cousins harvested timber from the disputed property.
 

 On February 23, 2007, McNeel sued Cousins in the Autauga Circuit Court. McNeel sought a judgment establishing the boundary line between her property and Cousins’s property. McNeel asserted claims, pursuant to Ala.Code 1975, § 35-14-2, and pursuant to Ala.Code 1975, § 9-13-62, based on the cutting and removal of the timber. She also included in her complaint a common-law action to recover the value of the timber cut, a claim of trespass, and a claim of negligence and/or wantonness.
 

 Cousins answered the complaint, asserting that he was the record owner of the disputed property or, alternatively, that, through the doctrine of prescriptive or statutory adverse possession and tacking, he owned the disputed property. Cousins also counterclaimed against McNeel, seeking a judgment declaring that he owned the disputed property. Cousins subsequently asserted a third-party complaint against Houston, alleging that, if McNeel was successful in her claims against Cousins, Cousins was entitled to damages arising from Houston’s breach of the warranty deed.
 

 On August 31, 2009, McNeel moved for a summary judgment in her favor, and, on January 4, 2010, after hearing arguments, the trial court entered a summary judgment in favor of McNeel. In that judgment, the trial court declared that Houston had never held an ownership interest in the disputed property and declared void those portions of the warranty deed in which Houston had purported to convey to Cousins the disputed property. The trial court determined the boundary line between the parcels belonging to McNeel and Cousins as follows:
 

 “In the SE 1/1 of Section U, Township 17, Range 13, Autauga County, Ala
 
 bama—
 

 “Commencing at the Southeast corner of Section 4, Township 17, Range 13, Au-tauga County, Alabama, thence west along the South line of said Section 4, 361.5 feet to the point of beginning; thence North 361.5 feet; thence East to the East line of said Section 4, 361.5 feet; thence North along the East line of said Section 4 to the Northeast Corner of the Southeast Quarter of said Section 4.
 

 “In the NE 1/1 of Section 9, Township 17, Range 13, Autauga County, Ala
 
 bama—
 

 “Commencing in the Independence Road 24.32 chains South from the Northwest corner of Section 10, Township 17, Range 13, Autauga County, Alabama; thence North 24.32 chains, thence West 7.26 chains to the point of beginning; thence South 20 degrees West 22.80 chains; thence South 15 degrees West 7.50 chains to a point on said Independence Road.”
 

 The trial court stated that it was scheduling a hearing to address damages to be imposed against Cousins as a result of his cutting timber on the disputed property.
 

 On February 2, 2010, Cousins moved the trial court, purportedly pursuant to Rule 59, Ala. R. Civ. P., to alter, amend, or vacate its January 4, 2010, judgment. The trial court denied that motion on March 22, 2010, by entry of an order in the State Judicial Information System. The trial
 
 *1043
 
 court also certified the January 4, 2010, summary judgment as final, pursuant to 54(b), Ala. R. Civ. P.
 

 Cousins timely filed his notice of appeal; that appeal was transferred, pursuant to Ala.Code 1976, § 12-2-7(6), to this court. The trial court stayed its consideration of the remaining claims pending our resolution of Cousins’s appeal.
 

 Standard of Review
 

 “ ‘We
 
 review the trial court’s grant or denial of a summary-judgment motion
 
 de novo,
 
 and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact.
 
 Bockman v. WCH, L.L.C.,
 
 943 So.2d 789 (Ala.2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the nonmovant must then present substantial evidence creating a genuine issue of material fact.
 
 Id.
 
 “We review the evidence in a light most favorable to the nonmovant.” 943 So.2d at 795. We review questions of law
 
 de novo. Davis v. Hanson Aggregates Southeast, Inc.,
 
 952 So.2d 330 (Ala.2006).’ ”
 

 Lloyd Noland Found., Inc. v. HealthSouth Corp.,
 
 979 So.2d 784, 793 (Ala.2007) (quoting
 
 Smith v. State Farm Mut. Auto. Ins. Co.,
 
 952 So.2d 342, 346 (Ala.2006)).
 

 Analysis
 

 Cousins asserts that the trial court erred in entering a summary judgment in favor of McNeel because, he says, McNeel failed to properly support her motion, as required by Rule 56, Ala. R. Civ. P. Cousins asserts that McNeel failed to support her summary-judgment motion with her affidavit attesting to the statements of fact made in her summary-judgment brief and that she failed to authenticate any of the documents submitted in support of her summary-judgment motion.
 
 See
 
 Rule 56(e), Ala. R. Civ. P. (addressing the form required for supporting affidavits and sworn or certified copies of all papers or parts thereof attached to a summary-judgment motion), and Rule 44, Ala. R. Civ. P. (addressing the form of authentication required for the admission of documents and records into evidence).
 

 Cousins timely objected to the trial court’s consideration of the unauthenticated documents submitted by McNeel by raising the issue in his opposition to McNeel’s summary-judgment motion.
 
 See Ex parte Elba Gen. Hosp. & Nursing Home, Inc.,
 
 828 So.2d 308, 313 (Ala.2001) (recognizing that an objection to a trial court’s consideration of unauthenticated materials submitted in support of a summary-judgment motion need not take any particular form); and
 
 Shows v. Donnell Trucking Co.,
 
 631 So.2d 1010, 1013 (Ala.1994) (recognizing that the trial court properly struck documents submitted in opposition to a summary-judgment motion because they were unauthenticated and a timely objection to those documents had been raised).
 

 Cousins, however, provided the missing authentication for some, but not all, of those documents by submitting the same documents in authenticated form in support of his opposition to McNeel’s summary-judgment motion. Thus, in considering McNeel’s motion, the trial court was entitled to consider the 2000 deed to McNeel, the 1978 deed to Houston, and the 2004 deed from Houston to Cousins despite the fact that McNeel had failed to authenticate those documents.
 

 Cousins’s submission and authentication of those deeds, however, could not rectify McNeel’s failure to establish, either by affidavit or other sworn testimony, her personal knowledge of the facts asserted in support of her summary-judgment motion.
 
 *1044
 

 See
 
 Rule 56(c), Ala. R. Civ. P. (requiring movant to support a summary-judgment motion with a narrative statement of what the movant contends to be the undisputed facts supported by specific references to pleadings, discovery materials, and affidavits); and Rule 56(e) (requiring affidavits to be made on personal knowledge and to state such facts as would be admissible in evidence to show that the affiant is competent to testify to the matters stated therein).
 
 See also Harold Brown Builders, Inc. v. Jordan Co.,
 
 401 So.2d 86 (Ala.1981) (rejecting the argument that an affidavit was required in support of a summary-judgment motion because the movant submitted other sworn testimony, i.e., deposition testimony, to support that motion). McNeel filed no affidavit or deposition testimony and, as a result, the brief filed in support of McNeel’s summary-judgment motion lacks evidentiary support for the statements of fact made therein.
 

 In support of her summary-judgment motion, McNeel also repeatedly cited to her complaint as supporting evidence. The allegations of her complaint, however, offer no support in obtaining a summary judgment.
 
 See Public Relations Counsel, Inc. v. City of Mobile,
 
 565 So.2d 78, 80 (Ala.1990) (“[A] Rule 56 motion allows the trial court to test the sufficiency of the evidence presented so as to determine if any real issues exist.”); and
 
 Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc.,
 
 671 So.2d 674, 675 (Ala.Civ.App.1995) (recognizing that a party may not rest upon the mere allegations or denials of his or her pleadings in supporting or opposing a motion for a summary judgment but must set forth specific facts showing that a genuine issue for trial exist).
 

 Thus, it is debatable whether the burden of proof to establish the existence of material issues of fact ever shifted from McNeel to Cousins. We need not consider that issue further, however, because we conclude that, even if McNeel’s submission in support of her summary-judgment motion was sufficient to shift the burden of proof to Cousins, genuine issues of fact remain as to the true location of the boundary line and as to Cousins’s counterclaim alleging adverse possession.
 

 Our supreme court has held that it is error for a trial court to establish a boundary line that is not supported by the evidence presented by either landowner in a boundary-line dispute.
 
 See Wilson v. Cooper,
 
 256 Ala. 184, 54 So.2d 286 (1951). Cousins correctly points out that McNeel’s 2000 deed references a fence running between McNeel’s property and the adjacent property to the east, i.e., the property then owned by Houston and now owned by Cousins, to establish the eastern boundary line of some or all of the property conveyed to her; some or all of that boundary line is at issue in this action. Construing the evidence in the record in a light most favorable to Cousins, we must conclude that that fence has been moved
 
 from
 
 its original location and, thus, no longer marks the boundary line between the coterminous properties.
 
 [2]
 
 Other than the affidavit testimony offered by Cousins, the trial court received no evidence regarding the former location of that fence.
 

 Additionally, Houston admitted that he had represented to Cousins that “there ha[d]
 
 never
 
 been any fenced boundaries on the property [Houston] was selling in 2004.” (Emphasis added.) That admission contradicts the language in the 2000 deed to McNeel, which purportedly relied
 
 *1045
 
 on a fence as the eastern boundary line of McNeel’s property. Cousins’s claim that the creek was represented as the western boundary of Houston’s property is further buttressed by Burke’s testimony regarding his findings in the tax records, i.e., that the tax maps indicated the creek to be the western boundary of the property conveyed by Houston to Cousins.
 

 For these reasons, we conclude that genuine issues of material fact exist regarding the location of the boundary line. As a result, McNeel was not entitled to a summary judgment.
 
 See
 
 Rule 56; and
 
 Wilson v. Cooper, supra.
 

 Cousins also asserted a counterclaim for adverse possession to the disputed property. Although not expressly addressed by the trial court in its January 4, 2010, order, the trial court implicitly entered a summary judgment in favor of McNeel as to that claim by concluding that “neither Houston nor ... Cousins has ever had any legitimate interest in any portion of the [disputed property].”
 
 See
 
 Ala.Code 1975, § 35-3-2 (recognizing that, in a boundary-line dispute, “[t]he court shall determine any adverse claims in respect to any portion of the land involved for which it may be necessary to determine for a complete settlement of the boundary lines”).
 

 “Our Supreme Court has consistently held that ‘where a case involves a boundary dispute between coterminous landowners, title may be acquired by an adverse possession period of only 10 years.’
 
 E.g., Moss v. Woodrow Reynolds &
 
 Son
 
 Timber Co.,
 
 592 So.2d 1029, 1030 (Ala.1992);
 
 Sashinger v. Wynn,
 
 571 So.2d 1065, 1067 (Ala.1990);
 
 Sims v. Vandiver,
 
 504 So.2d 250, 252 (Ala.1987). A party claiming ownership of property by adverse possession must prove by clear and convincing evidence that there was ‘actual, hostile, open, notorious, exclusive, and continuous’ possession of the property for the required period of time.
 
 Grooms v. Mitchell,
 
 426 So.2d 820, 822 (Ala.1983). ‘[T]he burden of proof rests upon the party asserting adverse possession, and every presumption is in favor of the holder of legal title.’
 
 Lee v. Brown,
 
 482 So.2d 293, 295 (Ala.1985). ‘The presence of a fence, which is an outstanding symbol of possession, coupled with normal acts of use in appropriation of the land, sufficiently satisfies the requirements of adverse possession.’
 
 Bearden v. Ellison,
 
 560 So.2d 1042, 1045 (Ala.1990).”
 

 Kendrick v. Kendrick,
 
 10 So.3d 1000, 1002-03 (Ala.Civ.App.2006).
 

 Additionally, “tacking of periods of possession by successive possessors is permitted against the coterminous owner seeking to defeat [a claim of adverse possession], unless there is a finding, supported by the evidence, that the claimant’s predecessor in title did not intend to convey the disputed strip.”
 
 Watson v. Price,
 
 356 So.2d 625, 627 (Ala.1978).
 

 The evidence establishes that Houston conveyed to Cousins property located in Sections 3, 4, 9, and 10 of Township 17, Range 13, of Autauga County. In his affidavit, Houston stated:
 

 “I am personally familiar with the common boundary line between the Houston Property and the McNeel Property in ... Section 4 and ... Section 9.... During my ownership of the Houston Property, the McNeel family and I recognized and accepted the east property line of the McNeel Property as described in the McNeel Deed to be the common boundary line between the Houston Property and the McNeel Property. At no time during my ownership did I possess or claim ownership of any portion of the McNeel Property.”
 

 
 *1046
 
 As discussed above, however, McNeel’s deed relies on the unidentified location of a fence to establish the eastern boundary of her property in Section 9. Genuine issues of disputed fact exist as to the original location of that fence; Houston’s affidavit does nothing to resolve that dispute.
 

 Additionally, it is undisputed that the warranty deed from Houston to Cousins included the disputed property in the description of the property conveyed. Thus, the deed evidences an intent to
 
 convey
 
 the disputed property. The affidavit testimony of Cousins, James Gunnels, Cade Gunnels, and Vaughn also indicated that Houston had represented to all of them that the western boundary of the property conveyed to Cousins was the creek, again evidencing a claim to the disputed property. Cousins’s affidavit also tends to establish that Houston had previously represented that he and/or his family had farmed livestock on the disputed property and that they had relocated a fence away from the creek to protect their livestock and not because his family had no claim to the disputed property. Further, although Houston denied that he and his predecessors had paid the taxes on the disputed property for more than 20 years preceding the 2004 conveyance to Cousins, Burke’s testimony tended to dispute Houston’s claim. Viewing, as we must, the evidence in the light most favorable to Cousins, we conclude that genuine issues of material fact exist as to Cousins’s claim of adverse possession. Thus, the issue was inappropriate for summary-judgment disposition.
 
 See
 
 Rule 56;-
 
 see also Wadsworth v. Thompson,
 
 912 So.2d 529, 533-34 (Ala.Civ.App.2005) (concluding that genuine issues of material fact existed as to landowner’s claim of adverse possession and reversing summary judgment entered in favor of neighbor); and
 
 Kendrick v. Kendrick,
 
 10 So.3d at 1003-04 (reversing a summary judgment entered on an adverse-possession claim because triable issues existed).
 

 We reverse the trial court’s summary judgment in favor of McNeel, and we remand the cause for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . That property was conveyed to McNeel, individually, by McNeel and her husband. Therefore, McNeel’s ownership of that property existed before 2000.
 

 [2]
 

 . We are also unable to determine from the evidence in the record if the boundary line established by the trial court purported to follow the location of the existing fence, the old fence, or neither.